## LILLY MOELLER v. CITY OF RUGBY, a Municipal Corporation.

(153 N. W. 290.)

Action for damages for injury caused by defective sidewalk. Defense, contributory negligence.

**Sidewalk — in dangerous condition — walking over — in darkness — contributory negligence.**

Plaintiff made a trip over a known dangerous sidewalk upon a dark night,

Note.—As to negligence in falling on an uneven sidewalk, see note in 17 L.R.A. (N.S.) 195.

As to effect of knowledge of defect in highway to charge one with contributory negligence, see notes in 21 L.R.A. (N.S.) 638, and 48 L.R.A. (N.S.) 634.

and encumbered herself with a bundle of clothes upon one arm, a framed diploma upon the other, and an electric light bulb in each hand. Under the circumstances disclosed by the opinion, plaintiff was guilty of such contributory negligence as precludes her recovery in this action.

Opinion filed April 28, 1915.

Appeal from the District Court of Pierce County, *Burr,* J.
Reversed.

*A. E. Coger* and *Paul Campbell,* for appellant.

A traveler who places himself in a dangerous position in the highway cannot recover for resulting injury. 15 Am. & Eng. Enc. Law, 2d ed. 468.

If one, knowing of the presence of stones, attempts to pass over them instead of around them, he is liable as a matter of law for injuries caused by tripping thereon. Nicholas v. Peck, 20 R. I. 533, 40 Atl. 418; Grandorf v. Detroit Citizens' Street R. Co. 113 Mich. 496, 71 N. W. 844; 7 Am. & Eng. Enc. Law, 2d ed. 393.

If, by the exercise of ordinary care and diligence, the person injured could have avoided the injury, and he fails to exercise such care and diligence, he cannot recover. 6 Am. & Eng. Enc. Law 2d ed. 411; 28 Cyc. 1522; Ely v. Des Moines, 86 Iowa, 55, 17 L.R.A. 124, 52 N. W. 475; Plummer v. Kansas City, 48 Mo. App. 482; Collins v. Janesville, 107 Wis. 436, 83 N. W. 695; Lerner v. Philadelphia, 221 Pa. 294, 21 L.R.A.(N.S.) 615, 70 Atl. 755; James v. Wellston, 13 L.R.A (N.S.) 1262, note.

Knowledge of defects, or where one fails to remember, constitutes conclusive evidence of negligence. Gilman v. Deerfield, 15 Gray, 577; Bruker v. Covington, 69 Ind. 33, 35 Am. Rep. 202.

It is his duty in such cases to take some other available route. Forker v. Sandy Lake, 130 Pa. 123, 18 Atl. 609; Grattan v. Williamston, 116 Mich. 462, 74 N. W. 668; Collins v. Janesville, 111 Wis. 348, 87 N. W. 244, 1087, 10 Am. Neg. Rep. 520, 107 Wis. 436, 83 N. W. 695; Gilman v. Deerfield, and Bruker v. Covington, supra; 17 Cyc. 57.

On the part of plaintiff, there was no evidence of care or caution to submit to the jury. She could not see on account of darkness; she burdened herself with lights and glass; the adjacent roadway was safe; the sidewalk on the other side of the street was safe. She knew the

condition of the walk she chose to use. Circleville v. Sohn, 20 Ohio C. C. 368, 11 Ohio C. D. 193; Grattan v. Williamston, 116 Mich. 462, 74 N. W. 668.

One who knows the existence of an obstruction and attempts to pass it, when in consequence of the darkness he cannot see it, has no reason to complain of an injury received by him therefrom. Lerner v. Philadelphia, 221 Pa. 294, 21 L.R.A.(N.S.) 614, 70 Atl. 755; Collins v. Janesville, 107 Wis. 436, 83 N. W. 695; Lemman v. Spokane, 38 Wash. 98, 80 Pac. 280; Lockport v. Licht, 221 Ill. 35, 77 N. E. 581, 20 Am. Neg. Rep. 292; Monroeville v. Weihl, 13 Ohio C. C. 689, 6 Ohio C. D. 188; Columbus v. Griggs, 113 Ga. 597, 84 Am. St. Rep. 257, 38 S. E. 953, 10 Am. Neg. Rep. 28; Conneaut v. Naef, 54 Ohio St. 529, 44 N. E. 236; Durkin v. Troy, 61 Barb. 437; Sickles v. Philadelphia, 209 Pa. 113, 58 Atl. 128.

Where observation would inform of danger, one who uses sidewalk takes risk. Moore v. Huntington, 31 W. Va. 842, 8 S. E. 512; Muller v. District of Columbia, 5 Mackey, 286; Harrigan v. Brooklyn, 16 N. Y. Supp. 743.

One assumes risk of apparent dangers. Washington v. Small, 86 Ind. 462.

Where knowledge exists, instructions assuming no knowledge are erroneous. Collins v. Janesville, 111 Wis. 348, 87 N. W. 241, 1087, 10 Am. Neg. Rep. 520; Rusch v. Davenport, 6 Iowa, 443; McLeod v. Spokane, 26 Wash. 346, 67 Pac. 74.

Present knowledge is a complete defense. Heberling v. Warrensburg, 204 Mo. 604, 103 S. W. 36; Centralia v. Krouse, 64 Ill. 19; Dehlinger v. Chicago, 100 Ill. App. 314; Gosport v. Evans, 112 Ind. 133, 2 Am. St. Rep. 164, 13 N. E. 256; Wilson v. Charlestown, 8 Allen, 137, 85 Am. Dec. 693; Irion v. Saginaw, 120 Mich. 295, 79 N. W. 572; Wright v. St. Cloud, 54 Minn. 94, 55 N. W. 819; Koch v. Edgewater, 14 Hun, 544; Schaafler v. Sandusky, 33 Ohio St. 246, 31 Am. Rep. 533; Hotchkin v. Philipsburg, 5 Sadler (Pa.) 188, 8 Atl. 434; Cooper v. Waterloo, 98 Wis. 424, 74 N. W. 115.

One is not excused for recklessly casting self on a known danger. Beatrice v. Forbes, 74 Neb. 125, 103 N. W. 1069; Evansville v. Christy, 29 Ind. App. 44, 63 N. E. 867; Barce v. Shenandoah, 106 Iowa, 426, 76 N. W. 747; Mayhood v. New York, 119 App. Div. 100,

103 N. Y. Supp. 856; Hentz v. Somerset, 2 Pa. Super. Ct. 225; Tuttle v. Clear Lake, — Iowa, —, 102 N. W. 136; Sheats v. Rome, 92 Ga. 535, 17 S. E. 922; Corlett v. Leavenworth, 27 Kan. 673; Rogers v. Bloomington, 22 Ind. App. 601, 52 N. E. 242; Coloney v. Kalamazoo, 124 Mich. 655, 83 N. W. 618; Gosport v. Evans, 112 Ind. 133, 2 Am. St. Rep. 164, 13 N. E. 256; Caven v. Troy, 32 App. Div. 154, 52 N. Y. Supp. 804; Messenger v. Bridgetown, 31 Can. S. C. 379; Slaughter v. Huntington, 64 W. Va. 237, 16 L.R.A.(N.S.) 459, 61 S. E. 155; Drake v. Seattle, 30 Wash. 81, 94 Am. St. Rep. 844, 70 Pac. 231; Macomb v. Smithers, 6 Ill. App. 470; Lynchburg v. Wallace, 95 Va. 640, 29 S. E. 675; Erie v. Magill, 101 Pa. 616, 47 Am. Rep. 739; Idlett v. Atlanta, 123 Ga. 821, 51 S. E. 709; Clayton v. Brooks, 150 Ill. 97, 37 N. E. 574; Richmond v. Mulholland, 116 Ind. 173, 18 N. E. 832; Munice v. Hey, 164 Ind. 570, 74 N. E. 250, 18 Am. Neg. Rep. 51; Black v. Manistee, 107 Mich. 60, 64 N. W. 868; Cohn v. Kansas City, 108 Mo. 387, 18 S. W. 973; Boyle v. Mahanoy City, 19 Pa. Co. Ct. 195; Ringelstein v. San Antonio, 21 S. W. 634; Winchester v. Carroll, 99 Va. 727, 40 S. E. 37; Roanoke v. Harrison, 1 Va. Dec. 801, 19 S. E. 179; DePere v. Hibbard, 104 Wis. 666, 80 N. W. 933; Lockport v. Licht, 113 Ill. App. 613; Meridian v. Stainback, — Miss. —, 30 So. 607, 10 Am. Neg. Rep. 619; Smith v. Jackson, 106 Mich. 136, 63 N. W. 982; Collins v. Janesville, 111 Wis. 348, 87 N. W. 241, 1087, 10 Am. Neg. Rep. 520; Lyon v. Grand Rapids, 121 Wis. 609, 99 N. W. 311; Bruker v. Covington, 69 Ind. 33, 35 Am. Rep. 202; Bender v. Minden, 124 Iowa, 685, 100 N. W. 352; New Castle v. Grubbs, 171 Ind. 482, 86 N. E. 757; Berg v. Milwaukee, 83 Wis, 599, 53 N. W. 890; Mt. Vernon v. Dusouchett, 2 Ind. 586, 54 Am. Dec. 467; Mitchell v. Tell City, — Ind. App. —, 81 N. E. 594; Bloomington v. Rogers, 9 Ind. App. 230, 36 N. E. 439; Perry v. Cedar Falls, 87 Iowa, 315, 54 N. W. 225.

Knowledge, darkness, and attempt, constitute contributory negligence. Hesser v. Grafton, 33 W. Va. 548, 11 S. E. 211; Austin v. Charlotte, 146 N. C. 336, 59 S. E. 701; Monence v. Kendall, 14 Ill. App. 229; Casey v. Fitchburg, 162 Mass. 321, 38 N. E. 499; Forker v. Sandy Lake, 130 Pa. 123, 18 Atl. 609; Boswell v. Wakley, 149 Ind. 64, 48 N. E. 637; Graney v. St. Louis, 141 Mo. 180, 42 S. W. 941, 3 Am. Neg. Rep. 419; Pittman v. El Reno, 4 Okla. 638, 46 Pac. 495, and cases

cited; Bohl v. Dell Rapids, 15 S. D. 619, 91 N. W. 315; Gosport v. Evans, 112 Ind. 133, 2 Am. St. Rep. 164, 13 N. E. 256; Erie v. Magill, 101 Pa. 616, 47 Am. Rep. 739; Friday v. Moorhead, 84 Minn. 273, 87 N. W. 780; Marshall v. Belle Plaine, 106 Iowa, 508, 76 N. W. 797; McLeod v. Spokane, 26 Wash. 346, 67 Pac. 74; Garbanati v. Durango, 30 Colo. 358, 70 Pac. 686; Irion v. Saginaw, 120 Mich. 295, 79 N. W. 572; Wright v. St. Cloud, 54 Minn. 94, 55 N. W. 819; Beatrice v. Forbes, 74 Neb. 125, 103 N. W. 1069; Collins v. Janesville, 107 Wis. 436, 83 N. W. 695; Cooper v. Waterloo, 98 Wis. 424, 74 N. W. 115; Barce v. Shenandoah, 106 Iowa, 426, 76 N. W. 747; Tuttle v. Clear Lake, — Iowa, —, 102 N. W. 136; Black v. Manistee, 107 Mich. 60, 64 N. W. 868; De Pere v. Hibbard, 104 Wis. 666, 80 N. W. 933; Parkhill v. Brighton, 61 Iowa, 103, 15 N. W. 853; McGinty v. Keokuk, 66 Iowa, 725, 24 N. W. 506; Cosner v. Centerville, 90 Iowa, 33, 57 N. W. 636; Sargeant v. Detroit, 156 Mich. 291, 120 N. W. 792; Stock v. Tacoma, 53 Wash. 226, 101 Pac. 830; Lemman v. Spokane, 38 Wash. 98, 80 Pac. 280; Kornetski v. Detroit, 94 Mich. 341, 53 N. W. 1106; Bowman v. Ogden City, 33 Utah, 196, 93 Pac. 563; McKenzie v. Northfield, 30 Minn. 456, 16 N. W. 264; Salzer v. Milwaukee, 97 Wis. 471, 73 N. W. 20; Mt. Vernon v. Dusouchett, 2 Ind. 586, 54 Am. Dec. 467; Quincy v. Baker, 81 Ill. 300, 25 Am. Rep. 278; Gibson v. Denison, 153 Iowa, 320, 38 L.R.A.(N.S.) 644, 133 N. W. 712; Knoxville v. Cain, 128 Tenn. 250, 48 L.R.A.(N.S.) 628, 159 S. W. 1084, Ann. Cas. 1915B, 762.

*D. C. Greenleaf* and *E. R. Sinkler,* for respondent.

The requests by defendant for instructions by the court were fully covered in the court's general instructions, and this is sufficient. Jackson v. Grand Forks, 24 N. D. 601, 45 L.R.A.(N.S.) 75, 140 N. W. 719; Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Solberg v. Schlosser, 20 N. D. 307, 30 L.R.A.(N.S.) 111, 127 N. W. 91; Johnson v. Fargo, 15 N. D. 525, 108 N. W. 243, 20 Am. Neg. Rep. 460; Ouverson v. Grafton, 5 N. D. 281, 65 N. W. 676; Carpenter v. Dickey, 26 N. D. 176, 143 N. W. 964.

Plaintiff thought the opening in the sidewalk where she was injured was farther west than where it actually was, and it was so dark she couldn't exactly locate it. She felt her way carefully and walked slowly. These facts do not show contributory negligence. Johnson v.

Fargo, 15 N. D. 525, 108 N. W. 243, 20 Am. Neg. Rep. 460; Ouverson v. Grafton, 5 N. D. 281, 65 N. W. 676; Solberg v. Schlosser, 20 N. D. 307, 30 L.R.A.(N.S.) 1111, 127 N. W. 91; Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359; Jackson v. Grand Forks, 24 N. D. 601, 45 L.R.A.(N.S.) 75, 140 N. W. 719.

Burke, J. Plaintiff was awarded $800 damages for injury alleged to have been received from fall upon defective sidewalk. Defendant appeals, relying principally upon the defense of contributory negligence. For the purposes of this appeal only, the city concedes its negligence, but alleges that plaintiff's negligence contributed to her own injury, and therefore, under well-settled principles of law, she ought not to recover.

(1) Under the circumstances, it is necessary to examine the facts disclosed by the record, and this will be given our first consideration. Plaintiff is a married woman, rather stout, was forty-one years of age at the time of the accident, and had lived in the city of Rugby about six years. Plaintiff was living with her family of four children in a house which is designated the "west" house. She had made it a practice to visit neighboring towns to give music lessons, sometimes staying several days. About the 27th or 28th of August, 1912, she started on one of those trips, returning Saturday evening, August 31st. During her absence her two daughters had moved the household effects to another house, designated the "east" house. This new location was on the same side of the street, one block and one lot, or something like 450 feet, distant. Between the two residences was a board sidewalk in a dilapidated condition. Plaintiff had resided in the west house about two years, and had passed along said street about four times a week, coming and going, though not always on that side of the street. She had noticed the condition of the walk, and on one occasion at least had spoken to the owner of the premises in an effort to get it repaired. She says she had noticed the defects of said sidewalk many times, and that everybody in Rugby must have known about them, too. Upon the evening of the said 31st of August about 10 o'clock, plaintiff went from the new location to the old house, passing over such defective sidewalk. Upon this journey she was accompanied by one of her daughters, who took her arm and piloted her safely to the old or west

house. After looking over the house to see if everything had been moved, plaintiff took some clothes on her left arm and a framed music diploma, which she suspended over her right arm by the hanging wire, and in each of her hands she took a common tungsten electric light bulb. In this condition she started back over the same sidewalk without the attendance of the daughter.

She testifies:

A. It was so pitch dark I could not have seen at all, if I had not carried a thing. . . .

Q. You say it was dark that night?

A. Yes, sir. It was pitch dark.

Q. Were you able to see any distance in front of you at that time?

A. I could not see a thing in front of me,—but not on account of the things I was carrying, simply on account of the darkness of the night.

Q. Now, did you know at that time of any defects in the sidewalk along there?

A. Yes, sir. I did. I doubt if there were many people in this town that did not know it.

Q. Go on and tell the jury how you proceeded along the sidewalk, and if anything happened to you while you were proceeding along the sidewalk.

A. I proceeded just as carefully as I could on account of the condition of the sidewalk, and dragged my feet along, but I thought this opening in the sidewalk was a little farther to the west than where it was, and it was so pitch dark I could not exactly locate the opening, and I got across the first open spot, and when I got here, of course, I was thrown into this opening on account of the darkness of the night. I could not see where I was walking. . . . I was thrown suddenly and violently to the ground, or rather I struck across the other planks on ahead of me.

Q. What happened to the bulbs in your hands?

A. They were smashed to innumerable pieces. . . .

Cross-examination:

Q. How long did you know the hole in which you fell had been in the sidewalk before you fell into it?

A. I can't exactly state. I knew it was a good while. It was a good long while. It was left that way very many months.

Q. And you had noticed it time and again in passing to and fro?

A. I had noticed it, yes, sir. I had noticed that, but there were so many others besides. . . .

Q. You are certain it was heavy clouds?

A. I am.

Q. Extremely dark?

A. Yes, sir, dark as pitch.

Q. Threatening rain?

A. It did look like rain, yes, sir, in my estimation. . . .

Q. Isn't there an electric light on that street?

A. It is so small that you can hardly see it.

Q. Isn't there one there?

A. It is one of the small incandescents.

Q. Isn't there one there?

A. Yes, sir, it wasn't burning that night. It very seldom did burn. . . . I know that light wasn't burning at our corner. . . . It was scarcely ever burning all summer long. . . .

Q. When did you first notice the darkness?

A. The moment I first stepped out of my door in the new house.

Q. Did you see it (the defect in sidewalk) as you went down?

A. I couldn't see it. It was too dark to see anything.

Q. What did you do? Did you go around?

A. We tried to walk around it, but we could not walk around it because it was so muddy and slippery. . . .

Q. And there was a beaten path around the opening in the sidewalk, was there not?

A. Not that I know of. . . .

Q. Just tell to the jury exactly how you got over or around that hole as you went down.

A. Well, I picked my way as carefully as I possibly could.

Q. Just state to the jury how you got over or around that hole as you went down.

A. I walked over it with the help of my daughter, just as carefully and slowly as I possibly could.

Q. You walked over it?

A. I did. . . .

Q. What did she (the daughter) say when she got to that hole?

A. She said, "Mamma, be careful for these walks are so dreadfully bad," so she took my arm. . . .

Q. You didn't realize when you passed over this hole?

A. Why, certainly.

Q. How did you realize it?

A. The effort to get across it.

Q. You made an extreme effort to get across it?

A. I did.

Q. How did you know where it was?

A. Why, I couldn't have known if my daughter had not led me by the arm. . . .

Q. As you went down from the east house to the west house, how many holes in the sidewalk did you step into?

A. I can't possibly tell you how many.

Q. Do you remember stepping into any?

A. I remember stumbling along, . . . and getting across them the best way I could.

Q. Explain to the jury how you picked your way from the east house to the west house; what do you mean by that?

A. Well, I used the greatest care I possibly could in picking my way across them.

Q. How?

A. Felt my way with my feet, you might say.

Q. Then you went along kind of shuffling one foot ahead of the other, feeling where you were stepping as you went down before you stepped on the foot and finished, is that correct?

A. Partly so, yes.

Q. Partly so? And in what other respect,—were you looking at the sidewalk?

A. I was trying to look, but I could not see anything.

Q. And you could not see?

A. No, sir, I could not see.

Q. You didn't see the sidewalk at all?

A. I tried to see,—all I remember of the sidewalk is it was so dark out,—I told you it was so very hard to see it.

Q. So you went out of the east house and down along this dangerous

sidewalk, and felt your way over it in the dark, over to the west house, to get some stuff, and coming back over it you fell in there?

A. Yes, sir.

Q. At the time you went down you knew of the condition and character of this sidewalk?

A. I did.

Q. And had it in your mind?

A. I certainly did, and tried to be as careful as I possibly could.

Q. Do you remember as you passed over this hole going down, thinking to yourself you must avoid it and go around it on the return?

A. I remember thinking of that hole and all of the other holes, and making up my mind to be as careful as I possibly could be.

Q. You said you remember the talk you had with Dr. Collison and myself at your house?

A. I remember you were there, yes, and remember talking to you.

Q. Do you remember saying you noticed that hole as you were going down, and that you thought to yourself, on your return, you must avoid it and go around it?

A. I remember saying I knew the hole was there, and that I tried to be as careful as I possibly could to avoid it.

Q. You say, when you reached that hole you thought to yourself, on your return, you must avoid it and go around it,—did you make that remark in the presence of Dr. Collison and myself?

A. I can't remember saying anything about going around the hole, but I did say the hole was there. . . .

Q. When, after you left the west house on your return trip, did you first begin to think about that sidewalk?

A. When I had crossed the crossing, and reached the Dr. Sorenson house. There is a—

Q. In the corner, at the corner, west corner of the block in which you lived, and in which you fell,—then is when you started to think about this sidewalk?

A. Yes, sir, it is.

Q. And you at that time thought about this hole,—you had called Mrs. Daigle's attention to it?

A. No, I thought of every hole and every plank, every condition in the whole sidewalk in that whole block.

Q. And, nevertheless, without stepping out alongside of the sidewalk, you then had the two tungsten lights in your hands, and the package, you felt your way up there on that very dark night, is that true?

A. It was muddy and I had to feel my way.

Q. You preferred to take chances on falling into a hole, rather than stepping out in the mud, is that correct?

A. It was muddy and slippery, and I was afraid I would fall there also. . . .

Q. Did you wear rubbers as you went up to the west house?

A. Yes, sir.

Q. You wore rubbers that night?

A. Yes, sir. My mind was not on that crossing at that time; it was on this sidewalk. . . .

Q. And if it had not been pitch dark you could have seen those holes in the sidewalk?

A. Sure I could—they were large enough to be seen.

Q. Is this (a photograph) a correct representation of the place where you fell?

A. Yes, sir, it seems to be.

Q. And is that a correct representation of the outside of the walk?

A. I can't say as to that, but I know it is as to the planks and boards.

Q. You noticed that there was grass on there, did you not?

A. There seems to be. . . .

We have tried to set out from plaintiff's own testimony a description of the surroundings at the time and place of the accident. Much other testimony was introduced, but it is unnecessary to refer to it in determining whether or not plaintiff was guilty of contributory negligence. No other witness saw the accident.

It is hardly necessary to say that the subject of road and sidewalk accidents has been thoroughly considered by the courts. Anyone interested in public road defects and accidents caused thereby should consult a valuable note found at page 1262, vol. 13 L.R.A.(N.S.). The question of defects in sidewalks is exhaustively briefed in a note at page 195, vol. 17 L.R.A.(N.S.), and the question of contributory negligence as affected by knowledge of a defect in a sidewalk is also exhaustively briefed at a note beginning at page 614, vol. 21 L.R.A.(N.S.). So

thoroughly covered is the matter in those various notes that we will be satisfied in this opinion to refer to and quote from them. From the note at page 614, 21 L.R.A.(N.S.), we quote: "Travelers upon streets must use all reasonable care and caution to avoid danger; they cannot carelessly run into danger and then make others pay for their negligence. [Cases cited.] While a city owes its citizens the duty to keep its highways reasonably safe for persons to pass over, the citizen owes the city the duty to use his senses, and not to run into obstructions that he is familiar with, or which, by the exercise of ordinary care, he could discover and easily avoid. [Cases cited.] And a person injured by a defective street cannot recover of the city for the injury if he was guilty of negligence contributing to the injury. [Cases cited.] . . . Though a municipal corporation may have failed to exercise proper care in the repair of its streets in keeping them free from obstruction, and but for such negligence an injury would not have happened, yet, the party injured cannot recover if he was aware of the defect or obstruction and failed to use ordinary care to avoid the accident. [Cases cited.] To warrant a recovery for an injury caused by a defect or obstruction in a highway, the person injured must have been in the exercise of ordinary care at the time of receiving the injury. [Cases cited.] . . . So, where an injury from an obstruction or defect in a street is the result of the negligence of both parties, the person injured cannot recover, as the law will not in such cases undertake to measure and balance the degree of responsibility attributable to each. [Cases cited.] . . . [At page 622.] A person knowing a street or sidewalk to be dangerous has no right to assume it to be safe, and act upon that assumption. [Cases cited.] . . . The presumption which a traveler may indulge, that the streets of a city are safe, and which excuses him from maintaining a vigilant outlook, has no application where the danger is known and obvious. [Case cited.] And while a traveler may indulge in a presumption that the street on which he travels is not defective, an instruction to this effect is misleading and inapplicable where the person injured knew of the existence of the defect in question. [Cases cited.] . . . And if, in passing upon a street, he sees that there is an appearance of danger, he has no right to proceed further upon the presumption that the walk is in a safe condition; he must then use care commensurate with such

30 N. D.—29.

apparent danger; and, if he fails so to act, and receives an injury, he cannot recover." See also 28 Cyc. 1419–1428, and cases cited. Jackson v. Grand Forks, 24 N. D. 601, 45 L.R.A.(N.S.) 75, 140 N. W. 719, is not in point upon the questions herein decided.

The question of contributory negligence is primarily and generally a question of fact for the jury. The question becomes one of law, authorizing its withdrawal from the jury, only when but one conclusion can be drawn from the undisputed facts. Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359. If the undisputed facts are of such a character that reasonable men might draw different conclusions or deductions therefrom, then the question of negligence must be submitted to the jury. Heckman v. Evenson, 7 N. D. 173, 73 N. W. 427.

In the light of the foregoing facts and law, we now approach this case with an idea of determining whether or not plaintiff herein was guilty of such contributory negligence as precluded recovery as a matter of law, in this action. Respondent insists that the facts correspond closely enough with those in Pyke v. Jamestown, supra, to be governed thereby. But we do not agree with this contention. In the Pyke Case plaintiff was traveling upon a sidewalk with which she was somewhat familiar, but the defects of which she had forgotten. Her business was to go from her home to a hospital where she was receiving treatment. The accident occurred on March 1st and the weather was cold. In the case at bar plaintiff had no urgent business in going from the new to the old house, excepting, as she says, to "look around to see what is left." She had lived within 300 feet of this defect for over two years, and testifies that she knew about it and remembered it both coming and going. If the night was as dark as she says it was, ordinary prudence would have suggested a delay until morning or the carrying of a lantern. After traveling to the west house, she encumbered herself with a framed diploma, faced with glass, and with a package which she says contained "some waists for the girls and a couple of dressing sacks of my own,—and I can't exactly positively tell you, because I don't just remember." Then, with the knowledge of the dangerous road still in her mind, she starts back with two electric light bulbs, one in each hand. The daughter who had assisted her over the path the first time did not accompany her home. When we further remember that plaintiff was a stout woman, forty-one years of age, the only con-

clusion that can be reached is that she was guilty of negligence so palpable that reasonable minds must reach but one conclusion as to its existence. Respondent argues that the streets were muddy and that the other side of the sidewalk was equally bad, but no attempt is made to controvert the negligence pointed out by appellant, in making the trip at all, in making the return trip without a lantern, and in encumbering herself with the articles mentioned; and we believe no answer can be made thereto.

As hereinbefore mentioned, the negligence of the defendant and the negligence of the plaintiff combine to cause the injury, and there is no means of ascertaining the proportion contributed by plaintiff, and the law says that she cannot recover. Defendant moved for a directed verdict at the close of all of the testimony, and for judgment notwithstanding the verdict, upon motion for a new trial. These motions should have been granted. The trial court is directed to so order at the present time.